IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 24-CR-00093 (JEB) |
| v. | : | 18 U.S.C. § 111(a)(1) |
| **GREGORY YETMAN,** | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Gregory Yetman ("Yetman" and "the defendant"), with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. Gregory Yetman, a heavy equipment operator living in New Jersey, drove to the vicinity of Washington, D.C., on January 6, 2021. At that time, he was also an enlisted military police officer with the U. S. Army National Guard. He parked near the Franconia-Springfield Metro station and rode the Metro to the Smithsonian station, arriving at approximately 7:30 a.m.

Yetman listened to the various speeches at the rally for then-President Trump at the Ellipse and understood that then-President Trump state that they were going to go to the U.S. Capitol.

9. Yetman then walked to the west side of U.S. Capitol building, where he heard people chanting, "Stop the Steal." While there, he heard "flash bangs" and observed tear gas being deployed by U.S. Capitol police officers who were defending the Capitol. He observed rioters who had been exposed to gas and oleoresin capsicum ("OC") spray and watched as other rioters attempted to break windows. He also saw a police officer get pulled into the crowd but did not attempt to help the officer.

10. The riotous mob eventually overran the outnumbered police officers defending the west side of the Capitol. As it did so, Yetman climbed up to the platform on the West Terrace and was among the rioters encircling remaining police officers who continued to attempt to defend the federal Capitol building during the civil disorder. An isolated group of officers (who were visibly wearing police uniforms) struggled with the riotous mob but were quickly surrounded and assaulted from all sides. At approximately 2:29 p.m., as other rioters continued to assault those officers, Yetman picked up an MK-46H cannister containing OC spray (a lachrymatory agent capable of causing serious bodily injury), held the cannister under his arm, and, from within the effective distance of the spray, intentionally assaulted the same group of besieged police officers by spraying them with the OC spray. After Yetman sprayed multiple officers for approximately 12-14 seconds, the officers retreated towards other officers and left the area. The defendant discarded the MK-46H cannister on the platform. As he retraced his steps, Yetman held up a cellular telephone to take photographs and videos of the riotous mob. Shortly thereafter, Yetman walked up to the Lower West Terrace where rioters were attempting to make entry into the U.S. Capitol building through a heavily defended tunnel.

11.     On and shortly after January 6, the defendant made a series of posts on Facebook describing his conduct at the U.S. Capitol. Among his posts, Yetman stated that "[w]hat happened at the Capitol was unfortunate and unacceptable, I was there I witnesses it" but blamed Antifa for starting the violence ("I can attest to Antifa members infiltrating our protest and meshing in with the Trump supporters . . . They riled up Trump supporters and got the violence going."). In one post, he acknowledged that the police officers defending the U.S. Capitol were "there to do their job," but wrote in another:

> I was there...we were gathering and they started lobbing oc at us. people got posed and rightly so. it was sad to see what our country has come to but being peaceful and the "nice guys" got us nowhere. this won't go away...the people have been wronged and we want justice and fairness. nobody went there to hurt law enforcement… but they sure as fuck hurt many people in return. they were relentless and i don't think i'll be backing the blue after this. they are modern brown shirts.

12.     In January 2021, FBI agents interviewed Yetman. Among other statements, Yetman insisted that he supports law enforcement and that anyone who entered the Capitol or assaulted an officer should be prosecuted.

13.     Federal investigators attempted to arrest Yetman for his conduct on January 6 on November 8, 2023. As soon as he saw the officers, however, Yetman first attempted to re-enter his residence and, when unable to do so, fled into the woods on foot. He dropped a knife and a cellular telephone; investigators subsequently located multiple firearms and significant quantities of ammunition in his residence, a loaded firearm in his vehicle, and additional firearms and weapons in a storage unit. After an extensive manhunt that lasted several days, Yetman turned himself into local police officers on November 10, 2023.

### *Elements of the Offense*

14. The parties agree that Assaulting, Resisting, or Impeding Certain Officers or Employees in violation of 18 U.S.C. § 111(a)(1) requires the following elements:

   a. First, that the defendant assaulted officers from the Metropolitan Police Department;

   b. Second, the defendant did such acts forcibly;

   c. Third, the defendant did such acts voluntarily and intentionally;

   d. Fourth, the officers assaulted were assisting officers of the United States who were then engaged in the performance of their official duties; and

   e. Fifth, the defendant made physical contact with the officers or acted with the intent to commit another felony, namely, obstructing officers during a civil disorder in violation of 18 U.S.C. § 231(a)(3).

### *Defendant's Acknowledgments*

15. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that that he forcibly, knowingly, and intentionally assaulted police officers; that those officers were assisting officers of the United States who were engaged in the performance of their official duties at the time of that assault; that the defendant made physical contact with those officers; and that the defendant acted with the intent of obstructing and impeding those officers while they were engaged in the lawful performance of their duties during a civil disorder that both obstructed commerce and the performance of a federally protected function. The defendant further admits that he used a dangerous weapon during the assault on the police officers, and that the assault on the police officers was motivated by their status as government employees.

          Respectfully submitted,

          MATTHEW M. GRAVES
          United States Attorney
          D.C. Bar No. 481052

By:    *s/ Craig Estes*
          CRAIG ESTES
          Assistant U.S. Attorney
          Mass. BBO # 670370
          Capitol Siege Section
          U.S. Attorney's Office
          District of Columbia (Detailee)
          Telephone No: 617.748.3100
          Email Address: craig.estes@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Gregory Yetman, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 3/28/24

/s/ Gregory Yetman
Gregory Yetman
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 3/28/24

*Nicholas Smith*
Nicholas Smith
Attorney for Defendant